JOURNAL ENTRY and OPINION
Petitioner is the defendant in State v. Birner, Cuyahoga County Court of Common Pleas Case No. CR-406034. The grand jury returned a seventy-count indictment against several defendants in Case No. CR-406034. Petitioner is charged with forty-two counts, including engaging in a pattern of corrupt activity (R.C. 2923.32), aggravated drug trafficking (R.C. 2925.03), aggravated possession of drugs (R.C. 2925.11) and funding of drug trafficking (R.C. 2925.05). Petitioner does not dispute respondent's assertion that a number of these counts carry a ten-year sentence plus an additional sentence of up to ten years.
The court of common pleas originally set petitioners s bail at $2 million. Petitioner filed a motion to release defendant on his recognizance or, in the alternative, motion to reduce bail amount ("motion to reduce bail"). The court of common pleas held a hearing on that motion on August 3, 2001 and, at the end of that hearing, announced its decision reducing the bail amount to $1 million subject to the following conditions: petitioner will not leave Cuyahoga County without the court's permission; and petitioner will be under house arrest and monitored by the Cuyahoga County Probation Department's supervised release program. Counsel for the parties agreed to stipulate to proffering evidence at the hearing rather than bringing in witnesses to testify. Copies of the motion to reduce bail and the transcript of the hearing are attached to the petition, as well as the affidavit of petitioner.
The petition in this action was filed on October 24, 2001. This court granted leave to respondent until November 7, 2001 to file a response. Attached to respondent's brief in opposition is the affidavit of Anthony D. Church, a detective in the Cuyahoga County Sheriff's Department ("Church Affidavit").
Petitioner contends that the bail set by the court of common pleas in the amount of $1 million is excessive and requests that this court reduce his bail to $100,000.00. Respondent requests that this court deny the petition.
The standard for considering this action in habeas corpus is well-settled.
 In a habeas corpus action to contest the reasonableness of bond, this court must determine whether the trial court abused its discretion. In re Gentry [(1982), 7 Ohio App.3d 143, 454 N.E.2d 987]; Jenkins v. Billy (1989), 50 Ohio St.3d 270, 538 N.E.2d 1045; Lewis v. Telb (1985), 26 Ohio App.3d 11, 26 OBR 179, 497 N.E.2d 1376.
In re Green (1995), 101 Ohio App.3d 726, 730, 656 N.E.2d 705 [Eighth Dist.].
In In the Matter of: Miller v. McFaul (Sept. 30, 1997), Cuyahoga App. No. 73214, unreported, we described the nature of our review of an action in habeas corpus challenging the propriety of the amount of bail before trial.
 A petition for a writ of habeas corpus, which involves a claim of excessive pretrial bail, is a hybrid case which requires either or both appellate and original review. See State ex rel. Baker v. Troutman (1990), 50 Ohio St.3d 270; Jenkins v. Billy (1989), 50 Ohio St.3d 270; In re DeFronzo (1977), 49 Ohio St.3d 271.
Id. at 1-2. Crim.R. 46(C) sets forth the factors that the court of common pleas is required to consider in determining bail and provides:
 In determining the types, amounts, and conditions of bail, the court shall consider all relevant information including but not limited to:
 (1) The nature and circumstances of the crime charged;
 (2) The weight of the evidence against the defendant;
(3) The confirmation of the defendant's identity;
 (4) The defendant's family ties, employment, financial resources, character, mental condition, length of residence in the community, jurisdiction of residence, record of convictions, record of appearance at court proceedings or of flight to avoid prosecution;
 (5) Whether the defendant is on probation, a community control sanction, parole, post release control, or bail.
In light of the evidence proffered during the hearing on the motion to reduce bail, we cannot conclude that the court of common pleas abused its discretion by reducing petitioner's bail from $2 million to $1 million.
Petitioner was born in San Diego, is an American citizen, is twenty-nine years old, and lived most of his life in Buffalo, New York. His father, mother and sister continue to reside in Buffalo.; his brother resides in Florida. Petitioner lived in the Cleveland area for one and one-half years until October 2000, during which time the events giving rise to Case No. CR-406034 occurred. His uncle, aunt and two cousins live in the Cleveland area. Petitioner had been living in Tampa, Florida for six months at the time of his arrest; he waived extradition from Florida. He has no prior record of arrests or convictions, and his identity is not at issue.
The state contends that petitioner is the "ring leader" of an enterprise that acquired "ecstasy" as well as marijuana in Canada and sold them in the local community. "Ecstacy is the common name for methylenedioxmethamphetamine, MDMA, a Schedule I controlled substance."State v. Dalton (Oct. 4, 2001), Cuyahoga App. No. 79252, unreported, at 1, n. 1. The state proffered that the enterprise led by petitioner acquired between two thousand and ten thousand ecstasy pills per week at a cost of $2 to $5 per pill. These pills were sold for $10 to $15 each. This activity occurred over several months ending in October 2000, with a majority of the trafficking between May and October 2000. The state proffered before the trial court that the revenues to the enterprise exceeded $1 million, although petitioner disputes this amount. Using the figures provided by the state, the court of common pleas calculated that the enterprise would have a minimum estimated profit of $400,000.00.
Petitioner argues that his bail should be $100,000 because his net worth is approximately $60,000.00. That is, petitioner's net worth is not sufficient to pay the ten-percent premium a surety would require to secure the $1 million bond set by the trial court.
We note, however, that the defendant's financial resources is only one of the factors listed in Crim.R. 46(C)(4). Petitioner has few ties to this community. Although he has an aunt, uncle and two cousins in the Cleveland area, he lived in the area for only one and one-half years and moved to Florida over a year ago.
Furthermore, the state indicates that the indicted co-defendants who remain in Canada have ties to organized crime and have the capacity to hide petitioner or assist him in fleeing. Therefore, given the proximity of the Canadian border and the allegations of having engaged in a common criminal enterprise, petitioner's release without a sufficient bail amount would create an opportunity for petitioner to avoid prosecution.
This risk is exacerbated by the fact that petitioner's mother was born in the Philippines. Petitioner visited that country only once, at the age of twelve. One of the co-defendants, however, told law enforcement authorities that petitioner said he would flee to the Philippines if he were caught. Despite the fact that petitioner does not have a passport and his counsel states that he does not intend to apply for a passport, the court of common pleas may properly consider these facts in order to evaluate the potential for flight. Petitioner could be sentenced to a lengthy prison term under any one of more than forty counts. Although petitioner's counsel argues that — even under the state's theory of the underlying case — petitioner's contacts in Canada were merely suppliers, given the nature of the enterprise and proximity, the record in Case No. CR-406034 provides a substantial basis for concluding that petitioner could leave the United States and have contacts as far away as the Philippines.
"Similar cases provide benchmarks for evaluating whether bail is reasonable." In the Matter of Periandri v. McFaul (Apr. 19, 2001), Cuyahoga App. No. 79322, unreported, at 6. In Chari v. Vore (2001),91 Ohio St.3d 323, 744 N.E.2d 763, the petitioner was originally indicted on "nineteen felony counts, including engaging in a pattern of corrupt activity, theft, and forgery. These charges reflect a loss of approximately $6,000,000 to Chari's alleged victims." Id. After being released on a bond in the amount of $500,000 secured by a ten-percent deposit and petitioner's agreement to the court's home-detention program, the grand jury issued an indictment charging "Chari with forty felony counts, including the prior nineteen counts as well as four counts alleging criminal conduct by Chari that occurred while Chari had been released on bail after the first indictment." Id. at 323-324. Petitioner's bond was increased to $1 million without the option of a ten-percent deposit.
The court of appeals "granted the writ of habeas corpus, and modified the $1,000,000 bond so that it would be subject to the ten percent security-deposit provisions of Crim.R. 46(A)(2)." Id. at 325. The supreme court, however, reversed the court of appeals and exercised its plenary authority to dismiss the action in habeas corpus. "The common pleas court was authorized to increase the amount of Chari's bail, and in making its determination, it could consider the nature and circumstances of the forty felonies charged in the March 31 superseding indictment * * *."Id. at 328 (citations deleted). Obviously, considering the nature and circumstances of the more than forty felonies charged against petitioner in Case No. CR-406034 weighs heavily in favor of the trial court's determination of the amount of bond. Additionally, Chari clearly demonstrates that a court of appeals may dismiss an action in habeas corpus — even one challenging the propriety of a bond in the amount of $1 million — if the petition is not sufficient to demonstrate either an abuse of discretion by the trial court or appropriate grounds for independent review. We hold that the petition in this action does not demonstrate either an abuse of discretion or appropriate grounds for independent review.
In In the Matter of Blackwood v. McFaul (1999), 134 Ohio App.3d 138,730 N.E.2d 452, the petitioner was charged with violating R.C. 2925.11
(aggravated possession of drugs) after being arrested at Cleveland Hopkins International Airport while carrying and later abandoning a suitcase containing forty-six pounds of marijuana. Backwood had no ties to this community; he was from Houston, Texas and was not an American citizen. This court ordered his $1 million bond reduced to $750,000 subject to various conditions.
 In In the Matter of: Ghali v. McFaul, (Oct. 15, 1996), Cuyahoga App. No. 71334, unreported, this court reduced bail from five million dollars ($5,000,000.00) to three million dollars ($3,000,000.00). Petitioner Ghali was born in Egypt and received his medical degree in Cairo. He had been a naturalized citizen of the United States for approximately thirty years and lived in the Cleveland area for approximately seven years. Ghali was charged with various counts of felonious sexual penetration, kidnapping, felonious assault and gross sexual imposition.
 In In re Complaint for Writ of Habeas Corpus of Hernandez (1998), 126 Ohio App.3d 584, 710 N.E.2d 1187
[8th Dist.], petitioners were arrested in Cleveland after returning on a train from New York with two suitcases each containing over two thousand grams of cocaine. This court: reduced the three million dollar ($3,000,000.00) bond for a petitioner who had lived in the Cleveland area all of his life to seven hundred fifty thousand dollars ($750,000.00); reduced the one million ($1,000,000.00) bail for a petitioner born in Puerto Rico who had lived in the Cleveland area for fourteen years to five hundred thousand dollars ($500,000.00); reduced the one. million ($1,000,000.00) bail for a petitioner who is a citizen of the United States and a life-long resident of the Cleveland area to two hundred fifty thousand dollars ($250,000.00)
Blackwood, supra at 140-141.
Although each of these other cases presents unique facts, collectively they demonstrate that the range of the amount of bail in this case is not excessive. That is, in light of the factors prescribed by Crim.R. 46(C), we cannot conclude that the court of common pleas abused its discretion in setting bail. The nature and circumstances of the crimes charged are serious. These charges reflect a continuing course of criminal activity that was highly profitable. The weight of the evidence presented by the state against petitioner was substantial; the state represents that petitioner was the "ring leader" of a substantial, organized and extremely remunerative criminal enterprise involving transporting controlled substances across the Canada-U.S. border for sale in this community.
Petitioner's only family ties to this area are an aunt, uncle and cousins. He lived here for one and one-half years, and the state contends that he was engaged in significant criminal activity during much of that time.
While in the Cleveland area, he worked in the credit collections field and began studying for the examination required for stock brokers. He continued his study while in Florida. The record does not, however, reflect a continuing course of employment.
The fundamental factual conflict before the court of common pleas pertains to petitioner's financial resources. Petitioner's counsel insists that petitioner has a net worth of $60,000 and is, therefore, unable to secure a bond in any amount approximating that set by the court of common pleas. On the other hand, the state insists that, because petitioner was the "ring leader" of an enterprise that generated substantial revenue and had suppliers in Canada — who are also co-defendants — he has the capacity to flee this area and the United States. Petitioner counters that his former girlfriend — and co-defendant — testified before the grand jury that petitioner spent any funds he made from any criminal activity.
During the hearing before the court of common pleas, petitioner's counsel provided that court copies of the grand jury transcripts of three of petitioner's co-defendants. Those transcripts are not part of the record in this action. In light of the fact that the court of common pleas had the opportunity to consider the composite of all the facts proffered by the parties, we cannot conclude that the court of common pleas abused its discretion by reducing petitioner's bail from $2 million to $1 million.
Likewise, petitioner has not complied with the requirement: of R.C.2725.04(D) that "[a] copy of the commitment or cause of detention" be attached to the petition. See, e.g., State ex rel. Norman v. McFaul
(Apr. 8, 1999), Cuyahoga App. No. 76231, unreported, at 7 (action in habeas corpus dismissed where petitioner attached only "a copy of a computerized version of the text of a journal entry purporting to set bail" without attaching a copy of the journal entry itself to a petition for habeas corpus asserting that pretrial bail in the amount of $1 million was excessive; the defendant was charged with two counts of aggravated murder and aggravated robbery and could be sentenced to death).
Similarly, petitioner in this action has not attached a copy of the journal entry setting bail. Compare Brown v. Rogers (1995),72 Ohio St.3d 339, 650 N.E.2d 422 (in postconviction bail cases, copies of entries or orders denying bail required); Hadlock v. McFaul (1995),105 Ohio App.3d 24, 663 N.E.2d 667 [Eighth Dist.] (at 26: "a sheet of paper with handwritten notations which appears to be a portion of a docket" does not comply with R.C. 2725.04[D]). As was the case in Norman, petitioner provides no explanation for the absence of the journal entry. Norman, supra, at 7.
Accordingly, we dismiss this action in habeas corpus sua sponte. SeeJenkins v. Billy, supra. Petitioner to pay costs.
Writ dismissed.
JAMES J. SWEENEY, J. CONCURS, TERRENCE O'DONNELL. J. CONCURS.